739 So.2d 1084 (1999)
JIM BURKE AUTOMOTIVE, INC.
v.
Johnny C. MURPHY.
1980051.
Supreme Court of Alabama.
June 25, 1999.
*1085 John Martin Galese and Jeffrey L. Ingram of John Martin Galese, P.A., Birmingham, for appellant.
Lloyd W. Gathings II and Robert W. Shores of Gathings & Associates, Birmingham; and E.L. Brobston of Brobston & Brobston, Bessemer, for appellee.
SEE, Justice.
Johnny C. Murphy sued Jim Burke Automotive, Inc. ("Burke"); Chrysler Credit Corporation ("Chrysler"); and MS Diversified Corporation, MS Life Insurance Company, and MS Dealer Service Corporation (collectively, the "MS Companies"), seeking compensatory and punitive damages for fraud, fraudulent suppression, negligent hiring and supervision, and violations of state consumer-lending law. Murphy filed the action in his individual capacity and on behalf of a class of similarly situated customers of Burke. Murphy claimed that he and the class members had been charged excessive premiums for credit-life insurance they had bought on loans they had taken to finance their purchases of motor vehicles from Burke.
Burke moved to compel arbitration of Murphy's claims, arguing that Murphy had voluntarily executed a valid arbitration agreement that obligated him to arbitrate all disputes with Burke arising out of or in connection with the purchase of his vehicle. Initially, the trial court granted Burke's motion to compel arbitration and then denied Murphy's motion to "reconsider" that ruling. Several months later, however, Murphy filed a second motion to reconsider, arguing that the arbitration agreement was an unenforceable contract of adhesion. The trial court agreed and granted Murphy's motion. Because we conclude that Murphy failed to prove that the arbitration agreement was unconscionable, we reverse and remand.

I.
On December 16, 1993, Murphy purchased a 1993 Dodge Colt automobile from Burke. The purchase was financed by Chrysler. As part of that purchase, Burke executed a retail installment contract, which was assigned to Chrysler, and a buyer's order, which contained an arbitration *1086 agreement. The arbitration agreement provided:
"Buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer and Jim Burke Automotive Inc. arising out of or in connection with the purchase of this vehicle will be resolved by arbitration in accordance with the procedure set forth on the reverse side of this buyer's order."
The reverse side of the document stated in pertinent part:
"All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration...."
In connection with the sale, Murphy also purchased credit-life and credit-disability insurance from MS Life Insurance Company and a service contract from MS Dealer Service Corporation.
Murphy defaulted on the installment contract in 1995, and Chrysler repossessed the car. After Chrysler sold the car, a deficiency amount was established. In January 1997, Chrysler sued Murphy in the United States District Court for the Northern District of Alabama to recover the deficiency owed under the retail installment contract. Murphy answered Chrysler's complaint. In August, Murphy filed this action in the Jefferson Circuit Court, Bessemer Division, alleging various individual and class-action claims against Chrysler, Burke, and the MS Companies, including fraud, fraudulent suppression, negligent hiring and supervision, and violations of state consumer-lending law.
In September 1997, Chrysler, relying on the arbitration agreement, moved the federal district court to compel arbitration of the claims raised in Murphy's action filed in the state circuit court. The MS Companies moved to intervene in regard to Chrysler's motion to compel arbitration. Chrysler and the MS Companies then moved to stay the proceedings in the state circuit court. Burke did not seek to intervene in the federal action, but instead moved the state circuit court to stay the proceedings and to compel arbitration. In December 1997, the state circuit court granted Burke's motion, and in April 1998 that court denied Murphy's motion to reconsider the ruling granting Burke's motion. In July, Murphy filed in the state circuit court a second motion to reconsider. In August, before the state circuit court had ruled on Murphy's second motion to reconsider, the federal district court granted the motions by Chrysler and the MS Companies to stay the proceedings on the claims pending against them in the state circuit court and to compel arbitration of those claims.
The federal district court held, among other things, that Murphy was collaterally estopped from arguing that the arbitration agreement was an unenforceable contract of adhesion because Murphy had made that argument to the state circuit court and it had been denied. The federal district court further held that, even if the doctrine of collateral estoppel did not apply, Murphy had not made "a sufficient showing of unfairness, unconscionability, or coercion to warrant a conclusion that the [arbitration] agreement is an adhesion contract." Murphy did not appeal the federal district court's decision. In September, the state circuit court granted Murphy's second motion to reconsider and vacated its prior order compelling arbitration of Murphy's claims against Burke, holding that the arbitration agreement was an unenforceable contract of adhesion.

*1087 II.
Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any ... contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, at 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement, and a trial court's denial of a motion to compel arbitration is subject to appeal. See, e.g., Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala.1999). This Court will apply the de novo standard of review to a trial court's refusal to compel arbitration. Id.
Murphy concedes that he signed the written arbitration provision contained in the buyer's order. Murphy also apparently concedes that the arbitration agreement is broad enough to cover his claims against Burke. Murphy does not claim that his purchase of the vehicle from Burke does not involve interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (holding that all arbitration provisions dealing with transactions involving interstate commerce are subject to the FAA). Murphy argues only that the arbitration agreement is a contract of adhesion and is unenforceable because, he says, to enforce it would violate his constitutional right to a jury trial. Specifically, Murphy asserts that he was in an inferior bargaining position; that he did not understand the implications of agreeing to arbitrate his disputes; and that he had traveled to the Burke dealership in a taxicab, for which a Burke salesman paid the fare, and that he would have had no transportation home if he had not purchased a vehicle from Burke. Burke responds with the argument that the trial court erred in vacating its order compelling arbitration because, among other things, Murphy failed to establish that the arbitration agreement is unconscionable.[1]
"A court should refuse to enforce an arbitration agreement where the record supports a determination of unconscionability." Ex parte Napier, 723 So.2d 49, 52 (Ala.1998). However, "agreements to arbitrate are not in themselves unconscionable." Ex parte McNaughton, 728 So.2d 592, 598 (Ala.1998). The burden of proving unconscionability rests with the party challenging the arbitration agreement. Id. The only evidence submitted on this issue was Murphy's affidavit, in which he testified that when he purchased the vehicle he had come to the dealership in a taxicab, for which a Burke salesman paid the fare; that on that occasion he had no way of returning home if he did not buy the vehicle; and that no one explained to him that by agreeing to arbitrate any disputes he was waiving his right to a jury trial. Burke, however, had no legal duty or obligation to explain the arbitration provision to Murphy. See Patrick Home Center, 730 So.2d at 1174. Moreover, Murphy has not asserted any matters that this Court has recognized as material to a determination of unconscionability, such as "a refusal of [his] request for assistance after [he] had notified someone that [he] was unable to see or to understand; [his] inability to obtain the product made the basis of this action from this seller, or from another *1088 source, without having to sign an arbitration clause; the oppressiveness or unfairness of the mechanism of arbitration; or the fairness of a discount or other quid pro quo in exchange for [his] accepting an arbitration agreement." Ex parte Napier, 723 So.2d at 52 (footnote omitted). The mere fact that Murphy did not have a motor vehicle and wanted to purchase one from Burke is insufficient to establish that the arbitration agreement is an unconscionable contract of adhesion.[2]

III.
The circuit court improperly denied Burke's motion to compel arbitration. We reverse the order denying that motion and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, LYONS, BROWN, and JOHNSTONE, JJ., concur.
COOK, J., concurs specially.
COOK, Justice (concurring specially).
Although I concur in today's opinion, I continue to adhere to the principles I discussed in Allstar Homes, Inc. v. Waters, 711 So.2d 924, 933 (Ala.1997) (Cook, J., concurring specially). I continue to be troubled by the "increasing frequency" with which arbitration clauses are presented on a "take-it-or-leave-it" basis in transactions for basic consumer goods and services. Id.
Johnny C. Murphy states that he telephoned the defendant Jim Burke Automotive, Inc. ("Jim Burke"), in response to an advertisement. Because Murphy had no means of transportation, Jim Burke procured a taxicab to bring him to its place of business. Murphy asserts that if his negotiations had not resulted in the purchase of an automobile, he would have had no means for returning home.
However, Murphy could hardly have failed to anticipate this scenario before he accepted the ride to the dealership. In my opinion, the circumstances of this case do not suggest that the arbitration agreement was unconscionable or that its enforcement would be unconstitutional. For these reasons, I concur.
NOTES
[1] Burke also argues that Murphy's second motion for reconsideration was untimely and that Murphy was collaterally estopped from arguing that the arbitration agreement was unenforceable.
[2] Because Murphy failed to prove that the arbitration agreement was unconscionable, we pretermit discussion of whether Murphy's second motion for reconsideration was untimely and whether Murphy was collaterally estopped from arguing that the arbitration agreement was unenforceable.