776 So.2d 741 (2000)
HOMES OF LEGEND, INC.
v.
Phillip A. McCOLLOUGH.
1980921.
Supreme Court of Alabama.
January 28, 2000.[*]
*742 David L. Selby II, Larry S. Logsdon, and Michael L. Jackson of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellant.
G. Houston Howard II of Howard, Dunn, Howard & Howard, Wetumpka, for appellee.
SEE, Justice.
Homes of Legend, Inc., the defendant in an action pending in the Elmore Circuit Court, appeals from the trial court's order denying its motion to compel arbitration of the claims filed against it by Phillip A. McCollough. Homes of Legend moved to compel arbitration, based on an arbitration provision contained in the written warranty it had furnished McCollough when he purchased a mobile home. Because we construe that arbitration provision as providing for nonbinding arbitration, we reverse and remand.

I.
In that part of its order denying Homes of Legend's motion to compel arbitration, the trial court made no express or specific findings of fact. According to McCollough's affidavit (the only affidavit contained *743 in the record), in May 1997 he agreed to purchase a mobile home from Hart's Mobile Homes Sales, Inc. ("Hart"). McCollough alleges that Hart agreed to "special order" the mobile home from Homes of Legend.[1] McCollough also alleges that when the mobile home was ordered, he paid Hart $500.00 as a down payment. The mobile home was delivered to Hart from Homes of Legend. After delivery to Hart, McCollough alleges, he paid Hart an additional $2,464 and entered into a "Set-Up Agreement" with Hart to deliver and set up the mobile home. The mobile home was delivered to McCollough and was set up. When the home was delivered, McCollough received and signed a "Limited One Year Service Warranty" issued by Homes of Legend. The warranty contains the following arbitration provision:
"LIMITATION OF REMEDIES: Any controversy, claim or dispute between or among the parties arising from or relating to the warranty, contract, or any agreements or instruments relating hereto or delivered in connection herewith, or the breach thereof, and any claim based on or arising from an alleged tort, [sic] and if the controversy, claim or dispute cannot be settled through direct discussions or negotiations, the parties agree first to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to arbitration. Thereafter, any unresolved controversy, claim or dispute arising from or relating to this contract, or breach thereof, and any claim based on or arising from an alleged tort, shall be settled by Arbitration Administered [sic] by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgement on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. All fees and expenses of the mediation-arbitration shall be borne by the parties equally. However, each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. This warranty, contract, or any agreements or instruments relating hereto or delivered in connection herewith between the parties shall be governed by the laws of the State of Alabama. All mediation or arbitration proceedings shall be conducted in Albertville, Alabama, or at any other place selected by mutual agreement."
Since delivery, McCollough alleges, he has lived continuously in the mobile home, occupying it as his personal residence.
In May 1998, McCollough sued Homes of Legend, alleging, among other things, that the mobile home contained numerous manufacturing defects. McCollough alleged breach of express warranty, breach of implied warranty, negligent construction, wanton construction, fraudulent concealment of violations of federal housing regulations, negligent or wanton repair, promissory fraud relating to service of the mobile home, fraudulent concealment of certain terms of the warranty, and violations of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 to § 2312 (the "Magnuson-Moss Act").[2] Homes of Legend answered the complaint, denying in the main those allegations. However, in its answer, Homes of Legend admitted that in May 1997 McCollough had purchased a mobile home manufactured by it, that it had given McCollough a limited one-year service *744 warranty, and that it had made repairs to McCollough's mobile home.
Homes of Legend moved to compel arbitration of McCollough's claims, based on the arbitration provision contained in the written warranty.[3] McCollough opposed Homes of Legend's motion, arguing, among other things, that the arbitration provision was unenforceable because the warranty expressly provides that it is intended to comply with the requirements of the Magnuson-Moss Act and regulations issued thereunder, and because those regulations prohibit a warrantor from including a binding-arbitration provision in its written warranty.[4] McCollough moved for a partial summary judgment on his claim that the provisions of Homes of Legend's warranty, specifically the "limitation-of-remedies" provision, violated the Magnuson-Moss Act. After conducting a hearing, which was not transcribed, the trial court denied the motion to compel arbitration and granted McCollough's motion for a partial summary judgment.[5] In denying Homes of Legend's motion to compel arbitration, the trial court, relying primarily on Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), aff'd, 127 F.3d 40 (11th Cir.1997), held, among other things, that the limitation-of-remedies provision, which contains the arbitration provision, is unenforceable because, the court held, it violates the Magnuson-Moss Act.[6] With respect to McCollough's motion for a partial summary judgment, the trial court held that 15 U.S.C. § 2310(d), part of the Magnuson-Moss Act, creates a cause of action for damages in favor of McCollough as a consumer and that Homes of Legend's limitation-of-remedies provision in its written warranty improperly seeks to avoid the obligations under the Act and violates the federal regulations promulgated pursuant to the Act. The trial court left undecided the question what damages McCollough was entitled to recover for violations of the Magnuson-Moss Act. Homes of Legend moved the trial court to reconsider its order denying its motion to compel arbitration, or, in the alternative, to amend its order to include the statement necessary under Rule 5, Ala. R.App. P., for a permissive appeal from the partial summary judgment. The trial court denied the motion to reconsider or to amend its order. Homes of Legend filed a notice of appeal from the trial court's order denying its *745 motion to compel arbitration.[7] Homes of Legend has not asked this Court's permission to appeal from the partial summary judgment in favor of McCollough.

II.
A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration. See Crimson Industries, Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999); A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990); see also Federal Arbitration Act ("FAA"), 9 U.S.C. § 16 (1994) (providing that an appeal may be taken from an order denying a motion to compel arbitration). This Court reviews de novo a trial court's denial of a motion to compel arbitration. See Kirkland, 736 So.2d at 600; Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1171 (Ala.1999).
Section 2 of the FAA, 9 U.S.C. § 2, provides in pertinent part:
"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Section 2 (except for certain employment contracts, see 9 U.S.C. § 1) has the effect of preempting conflicting Alabama law, in particular Ala.Code 1975, § 8-1-41(3), and thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce.[8] See Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-74, 277, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala. 1997). As the United States Supreme Court explained in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983):
"Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
(Emphasis added.) Questions of arbitrability that is, whether the parties agreed to submit their particular dispute to arbitration "must be addressed with a healthy regard for the federal policy favoring arbitration," id. at 24, 103 S.Ct. 927; but, in determining whether the parties agreed to arbitrate a dispute, this Court "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); accord Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala.1999). Consequently, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475-76, *746 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citation omitted).
However, the federal policy favoring arbitration does not require this Court to ignore the contractual intentions of the parties. See Volt Information Sciences, Inc., 489 U.S. at 478-79, 109 S.Ct. 1248; Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Instead, "[t]his Court has clearly and consistently held that a party cannot be required to submit to arbitration any dispute he has not agreed to submit." Ex parte Stallings & Sons, Inc., 670 So.2d 861, 862 (Ala.1995) (internal quotation marks and citations omitted); accord AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," and "parties are generally free to structure their arbitration agreements as they see fit." Volt Information Sciences, Inc., 489 U.S. at 478-79, 109 S.Ct. 1248. Accordingly, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. See Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552, 553 (Ala.1993). Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998). If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. See id. at 36; Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity. See Whitson, 703 So.2d at 948. Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms. See id. at 948-49; Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995). Additionally, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." City of Fairhope v. Town of Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968); see Whitson, 703 So.2d at 949. Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract. See Lackey v. Central Bank of the South, 710 So.2d 419, 422 (Ala.1998).
We conclude that Homes of Legend's written warranty provides for nonbinding arbitration. An ambiguity arises when the arbitration provision and the paragraph of the warranty expressing the parties' intent are considered together. The arbitration provision incorporates by reference the Commercial Arbitration Rules of the American Arbitration Association. Under state-law principles of contract interpretation, parties may be bound by documents incorporated by reference. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d at 36. The American Arbitration Association's Commercial Arbitration Rules, a copy of which is contained in the *747 record, provide for binding arbitration. Thus, under a plain reading, the limitation-of-remedies provision calls for binding arbitration.
The paragraph on the second page of the warranty expresses the parties' intent that the warranty comply with regulations promulgated by the Federal Trade Commission under authority of the Magnuson-Moss Act. That paragraph reads:
"This limited warranty is intended to comply with the requirements of the Magnuson-Moss Warranty Act, the regulations of the Federal Trade Commission issued thereunder, and any applicable State or local laws, rules or regulations. Any part of this warranty in conflict with any such law, rule or regulations shall be effective to the extent required thereby."
The FTC regulations promulgated under the Magnuson-Moss Act do not permit binding arbitration. See 16 C.F.R. § 700.8. Section 700.8 provides:
"A warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract.... Such [a] statement [is] deceptive since section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contract."
Thus, under § 700.8, a warrantor, such as Homes of Legend, is prohibited from including in its written warranty a provision calling for binding arbitration of any dispute between it and a consumer, such as McCollough, concerning that warranty. The Magnuson-Moss Act, though, does provide for "informal dispute settlement mechanisms," similar to arbitration, to resolve disputes between warrantors and consumers. 15 U.S.C. § 2310. The Magnuson-Moss Act permits a warrantor to "incorporate[] in a written warranty a requirement that the consumer resort to [an informal dispute-settlement mechanism] before pursuing any legal remedy" under the Act against the warrantor, id. § 2310(a)(3), provided that the decisions reached through use of those mechanisms are not legally binding, see 16 C.F.R. § 703.5(j) ("Decisions of the Mechanism shall not be legally binding on any person.").
We find that the limitation-of-remedies provision and the paragraph on the second page of the warranty conflict. The limitation-of-remedies provision calls for binding arbitration, but the paragraph on the second page calls for compliance with FTC regulations, which expressly prohibit binding arbitration.[9] Applicable federal *748 law requires us to reconcile this inconsistency in favor of the arbitration provision, unless the latter clause "plainly expresses" an intent to qualify the arbitration provision. We conclude that the second sentence in the paragraph quoted above from the second page of the warranty plainly expresses an intent on the part of these parties to qualify the arbitration provision. It specifically addresses the situation where a part of the warranty conflicts with a Magnuson-Moss Act regulation. It provides that "[a]ny part of this warranty in conflict with any such law, rule or regulations shall be effective to the extent required thereby." Thus, because the latter paragraph plainly qualifies the limitation-of-remedies provision, we resolve the conflict between the two provisions by concluding that they provide for nonbinding arbitration. We adopt this construction because it is the only reasonable construction that gives effect to both provisions and, thus, upholds, rather than destroys, the terms of the written warranty.[10] This construction is also consistent with the liberal federal policy favoring the enforcement of arbitration agreements. Under the particular facts of this case, state-law rules of contract construction further, rather than impede, the purposes and policies of the FAA "to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Information Sciences, Inc., 489 U.S. at 478, 109 S.Ct. 1248.
The arbitration provision conflicts with FTC regulations to the extent that provision requires binding arbitration. The FAA, however, does not require that an arbitration agreement provide for binding arbitration. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir.1998) ("In light of the strong presumption in favor of arbitrability recognized in Moses H. Cone, we hold that arbitration need not be binding in order to fall within the scope of the Federal Arbitration Act."). On the other hand, the FTC regulations promulgated under the Magnuson-Moss Act do not prohibit all forms of arbitration, only binding arbitration. Thus, the two provisions can be read consistently with one another to express an intent to submit the parties' claims to nonbinding arbitration.
Accordingly, we hold that Homes of Legend is entitled to "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Homes of Legend moved the trial court to stay the proceedings and to compel arbitration "pursuant to the terms and conditions of the ... arbitration agreement." The trial court erred in denying that motion. Therefore, we reverse the trial court's order to the extent that it denied Homes of Legend's motion to compel arbitration, and we remand this case for further proceedings consistent with this opinion.[11]
REVERSED AND REMANDED.
*749 MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (dissenting).
The trial court was right in denying the motion to compel arbitration, first, because the movant failed to satisfy the condition precedent of mediation expressly stated in the warranty. The requirement that the parties first resort to mediation is obviously the foundation of the recitation that the warranty is intended to comply with the Magnuson-Moss Act, which condones mediation but proscribes predispute agreements for binding arbitration. This proscription is the second reason the trial court was right in denying the motion to compel.
NOTES
[*] Note from the reporter of decisions: This opinion was released by the Supreme Court under the date January 28, 2000. The case was actually released to the public on January 27, 2000.
[1] We note that the record contains copies of documents relating to the sale of the mobile home involved in this case. Those documents indicate, however, that the purchaser of the mobile home was not McCollough, but instead "Irma J. Davis." Davis is not a party to this case.
[2] McCollough also sued Hart, alleging claims similar to those alleged against Homes of Legend. However, Hart is not a party to this appeal, and we need not address the claims against it.
[3] Hart also moved to compel arbitration. In addition, Hart moved to dismiss the complaint on the grounds that McCollough lacked the capacity to sue because he was not a party to the sale of the mobile home, but rather "Irma J. Davis" was the actual purchaser of the mobile home; or, in the alternative, to cause Davis to be added as a party plaintiff. The trial court denied Hart's motion to dismiss or to add Davis. The trial court held that McCollough had standing to sue and that the addition of Davis as a plaintiff would be inconsistent with Hart's position that Davis had agreed to submit any claims against Hart to arbitration. We express no opinion as to the trial court's ruling on these issues.
[4] McCollough also argued that because the warranty "is intended to comply with the requirements of ... any applicable State or local laws, rules or regulations" (quoting the paragraph on the second page of the written warranty), enforcement of the arbitration provision is prohibited by Ala.Code 1975, § 8-1-41.
[5] In addition to ruling on the motions to compel arbitration and the motion for a partial summary judgment, the trial court also ruled on other motions filed by the parties. The only order of the trial court that is properly before this Court, however, is its denial of Homes of Legend's motion to compel arbitration.
[6] The trial court did not directly address McCollough's argument that the Magnuson-Moss Act precludes the enforcement under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., of the arbitration provision in Homes of Legend's warranty. The trial court did note that the warranty states that it is intended to comply with the requirements of the Magnuson-Moss Act and concluded that "if the Magnuson[-]Moss Act did not preclude enforcement of the arbitration provision, the provision would nevertheless be unenforceable because [the warranty] `is intended to comply with the requirements of ... any applicable State or local laws' (see note 4), which would include [§ ] 8-1-41 of the Alabama Code."
[7] Hart has not filed a notice of appeal.
[8] We assume, without deciding, that the sale of the mobile home substantially affected interstate commerce. Neither party contested that issue before the trial court, and neither party raises that issue on appeal.
[9] The fact that the limitation-of-remedies provision contains both an arbitration provision and a choice-of-law provision ("This warranty... shall be governed by the laws of the State of Alabama.") does not render that provision internally inconsistent or ambiguous. In Mastrobuono, the United States Supreme Court interpreted a brokerage-account agreement that contained an arbitration provision and a choice-of-law provision in the same paragraph. See 514 U.S. at 54, 115 S.Ct. 1212. The first sentence of that paragraph provided that the entire agreement "shall be governed by the laws of the State of New York." Id. at 58-59, 115 S.Ct. 1212. The second sentence provided that "any controversy" arising out of the transactions between the parties "shall be settled by arbitration" in accordance with the rules of the National Association of Securities Dealers (NASD), or the boards of directors of the New York Stock Exchange and/or the American Stock Exchange. Id. at 59, 115 S.Ct. 1212. The authority of the arbitration panel to award punitive damages was challenged because, under New York law, the power to award punitive damages is limited to judicial tribunals and may not be exercised by arbitrators. See id. at 54-55, 115 S.Ct. 1212. Applying the federal policy favoring arbitration and state-law rules of contract construction, the Court held as follows:

"We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read `the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other."
Id. at 63-64, 115 S.Ct. 1212. Thus, in this case, the choice-of-law provision in the limitation-of-remedies paragraph provides for the application of Alabama substantive law in determining the merits of the parties' disputes, while the arbitration provision provides the procedure to be used in resolving those disputes. Moreover, even if the choice-of-law clause were interpreted as including Alabama substantive law, namely, Ala.Code 1975, § 8-1-41(3), and, thereby, to conflict with the arbitration provision, that statute would be preempted because it conflicts with the FAA. See Allied-Bruce Terminix Cos., 513 U.S. at 272-73, 115 S.Ct. 834; Volt Information Sciences, Inc., 489 U.S. at 477, 109 S.Ct. 1248.
[10] Because the parties expressly agreed to be bound by the FTC regulations prohibiting the inclusion of a binding arbitration provision in a written warranty, and because we construe the written warranty not to require binding arbitration, we need not address Homes of Legend's argument that Southern Energy Homes, Inc. v. Lee, 732 So.2d 994 (Ala.1999), was incorrectly decided and should be overruled.
[11] Homes of Legend also argues that the Magnuson-Moss Act does not apply to its written warranty because, it says, a mobile, or manufactured, home is not a "consumer good" for purposes of the FAA, 15 U.S.C. § 2301(1), and that the Magnuson-Moss Act does not preclude enforcement under the FAA of a binding arbitration agreement contained in a written warranty. We do not decide those issues, because we interpret the arbitration provision not to foreclose McCollough ultimately from suing Homes of Legend. Homes of Legend also challenges the partial summary judgment entered in favor of McCollough. However, that issue is not properly before this Court, because the partial summary judgment is not a final, appealable judgment. See Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380, 382 (Ala. 1987) (holding that the trial court's Rule 54(b), Ala. R. Civ. P., certification of its partial summary judgment on a single claim, leaving open the amount of damages, was erroneous; therefore, the appeal was dismissed for lack of jurisdiction, because there was no final judgment).